**M.G. WOOTTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–89–282–CR, 13–89–338–CR.**

Court of Appeals of Texas, Corpus Christi.

Nov. 8, 1990.

Janet Morrow, Houston, for appellant.

W.C. Kirkendall, Seguin, for appellee.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, M.G. Wootton, guilty of the sexual assault of F.R. and L.B. The trial court assessed punishment for each offense at fourteen years' confinement in the Texas Department of Criminal Justice, Institutional Division. By a single point of error, appellant challenges the sufficiency of the evidence to prove beyond a reasonable doubt that either F.R. or L.B., due to their mental defect, was incapable of appraising the nature of the sexual act and resisting it. We affirm the trial court's judgment.

The State's evidence shows that the complainants, F.R. and L.B., are two women classified as mentally retarded. F.R. is thirty-nine years old. From 1970 to 1986, she resided in facilities for the mentally retarded. Her I.Q. is between forty-five and fifty. She functions at a moderate to slightly below moderate level of mental retardation. This means that she functions as a six or seven-year-old child. She has worked at Warm Springs Rehabilitation Hospital folding towels. She has also worked at a sheltered workshop.

L.B. is forty-one years old. From 1957 to 1986, she also resided in facilities for the mentally retarded. Her I.Q. is between forty-five and fifty. She functions at a moderate to slightly below moderate level of mental retardation. She has worked at Warm Springs Rehabilitation Hospital setting up kitchen trays. She also has some janitorial skills.

In 1986, L.B. and F.R. moved into an apartment in Gonzales, Texas. Appellant's wife helped them live on their own and adjust to the Gonzales community. She tried to visit with them at least every other day. In March 1987, L.B. and F.R. moved into a trailer home which appellant owned. Appellant's wife continued to look after them, and appellant would go to their trailer on the average of twice a month to perform general maintenance duties.

L.B. testified that on the day after Thanksgiving, 1987, appellant entered their trailer and had sex with her. She said that she knows what a penis is. She also said that sometimes appellant puts his penis in her vagina. She testified she did not want to have sex with appellant. L.B. testified that when she resided in facilities for the mentally retarded, she had courses in sex education. The instructors told her how to safely have sex. They also told her what sex is.

F.R. testified that on this same day, appellant took down her pants and had sex with her. She testified that she knows what a penis is. She said that appellant put his penis into her vagina. She also stated that she did not want to have sex with appellant.

After the alleged sexual assaults, Arthur Heafer, a physician, and Cecil Reynolds, a psychologist, examined both women. When asked if F.R. and L.B. could resist having sexual relations (even if they did not want to have sexual relations) with a

person in whom they trust and who has a position of authority over them, Heafer said that because mentally retarded persons are generally trusting people, they try to cooperate with people in whom they have confidence. Reynolds testified that L.B., due to her mental defect, is incapable of appraising the nature of the sexual act and resisting it. He said that F.R. resisted the alleged sexual assault; however, due to her mental defect, she was not able to resist enough in order to prevent the alleged sexual assault. He said that both women function at similar levels. Appellant was not married to either F.R. or L.B.

Rose Oldershaw, F.R. and L.B.'s case manager, testified that if somebody like appellant tried to engage in sexual relations with either F.R. or L.B., they would not be able to resist him. She said this is due to their mental retardation.

Appellant denied having sex with either F.R. or L.B. He testified that he does not remember what he did on the day after Thanksgiving, 1987.

■ By a single point of error, appellant challenges the sufficiency of the evidence to prove beyond a reasonable doubt that either F.R. or L.B., due to their mental defects, was incapable of appraising the nature of the sexual act and resisting it. In reviewing the sufficiency of the evidence, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Zamora v. State*, 779 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1989, no pet.). In this connection, we must review all the evidence to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime and not just a plausible explanation of the crime.

Tex.Penal Code Ann. § 22.011(b)(4) (Vernon 1989) defines sexual assault as follows:

(a) A person commits an offense if the person:

(1) intentionally or knowingly:

(A) causes the penetration of the ... female sexual organ of another person who is not the spouse of the actor by any means, without that person's consent;

. . . . .

(b) A sexual assault under Subsection (a)(1) of this section is without the consent of the other person if:

. . . . .

(4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it;

■ In determining whether the evidence is sufficient to show a complainant's lack of consent due to a mental disease or defect, appellate courts focus on the cognitive and physical elements. *Rider v. State*, 735 S.W.2d 291, 292 (Tex.App.—Dallas 1987, no pet.); *Martinez v. State*, 634 S.W.2d 929, 934 (Tex.App.—San Antonio 1982, pet ref'd). The emphasis is on the complainant's ability to appraise the nature of the sexual act or the ability to resist it.

■ In the instant case, the evidence shows that F.R. and L.B. have I.Q.s between forty-five and fifty. They function at a moderate to slightly below moderate level of mental retardation. L.B. functions at the level of a six or seven-year-old child. F.R. functions at a similar level as L.B. F.R. and L.B. spent significant portions of their lives in facilities for the mentally retarded. Furthermore, the jury was able to observe L.B. and F.R. on the witness stand. F.R. and L.B. described in child-like language that appellant had sex with them. The evidence showed that these women, who were *non compos mentis,* were not able to resist appellant's sexual advances. Furthermore, Cecil Reynolds testified that L.B., due to her mental defect, is incapable of appraising the nature of the sexual act and resisting it. He said that F.R., due to her mental defect, was not able to resist enough in order to prevent the alleged sexual assault. Rose Oldershaw testified that, F.R. and L.B., due to their mental defects, could not resist if somebody like appellant

tried to have sex with them. Appellant knew of their mental deficiencies.

In *Rider v. State*, 735 S.W.2d 291, 292 (Tex.App.—Dallas 1987, no writ), a case similar to the one before us, the defendant and the complainant allegedly engaged in anal intercourse. Testimony revealed that the complainant had an I.Q. of 51 and was considered mildly mentally retarded. He functioned at the level of a six-year-old in most activities and spent most of his life in facilities for the mentally retarded because he needed special help. He had sex education classes, but these classes did not cover anal intercourse. The appellate court also noted that the jury viewed the complainant's demeanor on the witness stand. The appellate court held that the evidence was sufficient to support the jury's determination that the complainant was mentally diseased or defective so that he was *incapable of appraising the nature of the act or of resisting it. Rider,* 735 S.W.2d at 293.

Viewing the evidence in the light most favorable to the prosecution, we hold that the evidence is sufficient to support the jury's determination that F.R. and L.B., due to their mental defects, were incapable of appraising the nature of the sexual assault and of resisting it.

The trial court's judgment is AFFIRMED.