

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00699-CR

Kenneth John **GRABOWSKI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR2572
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Jason Pulliam, Justice

Delivered and Filed:  November 2, 2016

AFFIRMED

A jury found Kenneth Grabowski guilty of the offenses of aggravated sexual assault of a disabled individual and prohibited sexual conduct. The trial court assessed punishment and sentenced Grabowski to two concurrent sixty year terms of imprisonment. In three issues on appeal, Grabowski contends the evidence is insufficient to support the jury's finding of guilt for aggravated sexual assault; the trial court erred by allowing the testimony of the State's outcry witness; and the State's expert was not qualified to testify regarding the complainant's ability to consent. The trial court's judgment is affirmed.

**BACKGROUND**

Grabowski is the step-father of the complainant, who was diagnosed with moderate to severe intellectual disability, or mental retardation, at an early age. When the complainant was in middle school, she scored 40 on the Wechsler Intelligence Scale for Children, and she scored below 40 on the Goldman-Fristoe Test of Articulation. Although thirteen years' old at the time of the testing, the complainant's adaptive behavior level was that of a child three years' and three months' old. A reevaluation conducted in 2013, when the complainant was eighteen years' old, indicated she was eligible for continuation in the special education program.

On January 8, 2014, the complainant's mother ("Mother") took the complainant to visit Dr. Avril Jules because the complainant was experiencing pelvic discomfort. Dr. Jules attempted to question the complainant about her medical history, but the complainant did not respond in an understandable manner. Rather, Mother provided the complainant's medical history. According to Mother, the complainant had been experiencing pelvic pain and discomfort for approximately two weeks prior to the medical visit. Also, according to Mother, the complainant had not experienced a menstrual cycle since November 2013 and was not sexually active.

Dr. Jules was able to conduct a basic heart and lung examination, but the complainant was apprehensive when Dr. Jules conducted an abdominal pelvic examination. The complainant did not cooperate during the female genitalia examination. Although the complainant would not allow a comprehensive visual examination of her genitalia or the use of a speculum, Dr. Jules obtained genital swabs, which she sent to the lab for testing. Dr. Jules ordered blood and urine tests, as well as an abdominal ultrasound. The ultrasound results indicated the complainant was sixteen weeks and one day pregnant, and the blood test results indicated a positive result for chlamydia. According to Dr. Jules, the complainant displayed no reaction or understanding when she learned she was pregnant during her follow up examination on January 29, 2014.

On January 31, 2014, the complainant became agitated at school because she could not find her backpack. During the course of the incident, the complainant indicated to school faculty members she was going to have surgery in her abdominal area. Cheryl Danner, the school psychologist, noted the complainant's belly protruded and the complainant appeared pregnant. The complainant eventually informed Danner she had a baby in her belly and her daddy put it there.

School officials contacted the San Antonio Police Department ("SAPD") because they suspected the complainant had been the victim of sexual assault. The complainant reacted badly to the presence of a male school district police officer, and SAPD Officer Gladys Williams was called to the scene. Officer Williams spoke with the complainant for approximately thirty minutes alone in a separate room. According to Officer Williams, the complainant was a little upset, shy and "closed" during the interview, and each time Officer Williams tried to speak with the complainant about her pregnancy and why the police had been called, the complainant returned to talking about the missing backpack. Officer Williams was not able to conclude a sexual assault occurred.

The complainant gave birth to a son, KA, in July 2014. SAPD investigators obtained buccal swabs from the complainant, Grabowksi, and KA for the purpose of DNA testing. The DNA testing results indicated Grabowski could not be eliminated as KA's father.

A grand jury indicted Grabowski for aggravated assault of a disabled person and prohibited sexual conduct. A jury found Grabowski guilty of both offenses, and the trial court assessed punishment at two concurrent sixty year terms of imprisonment.

This appeal followed.

**DISCUSSION**

**Sufficiency of the Evidence**

Grabowski contends the evidence presented at trial is insufficient to support his conviction for aggravated sexual assault of a disabled individual. Specifically, Grabowski argues the State failed to present sufficient evidence the complainant lacked capacity to consent because the State's case relied on establishing the complainant's disability as the exclusive means of negating her ability to consent. Grabowski argues evidence of disability cannot be the sole basis for negating an individual's capacity to consent.

*Standard of Review*

When examining the sufficiency of the evidence, an appellate court considers all the evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

As the factfinder, the jury is the exclusive judge of witness credibility and the weight of the evidence. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). The jury is permitted to draw any reasonable inferences from the evidence so long as the inference is supported by the record. *Id*. Further, the reconciliation of conflicts in the evidence is within the factfinder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). If a record supports conflicting inferences, the appellate court presumes the factfinder resolved the conflicts in favor of the prevailing party and therefore defers to that determination. *Jackson*, 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to

support the conviction. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Canida v. State*, 446 S.W.3d 601, 605 (Tex. App.—Texarkana 2014, no pet.).

*Application*

To prove the charge of aggravated sexual assault of a disabled individual, the State must prove beyond a reasonable doubt that the defendant "intentionally or knowingly cause[d] the penetration of the sexual organ of another person by any means, without that person's consent and the victim is a disabled individual." *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(c) (West Supp. 2016). Consent, in the context of a sexual assault, is not effective if "the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *Id.* § 22.011(b)(4) (West 2011).

In this appeal, Grabowski does not contest penetration occurred or the complainant was a disabled individual. Rather, Grabowski contends only the State failed to prove lack of consent beyond a reasonable doubt because the State presumed the complainant was incapable of consenting to sexual activity and therefore did not sufficiently prove lack of consent. Grabowski argues the existing case law in this area is antiquated and fundamentally incompatible with the United States Supreme Court's opinion in *Lawrence v. Texas*, which Grabowski asserts established a fundamental right to engage in sexual activity. *See Lawrence v. Texas*, 539 U.S. 558 (2003). Grabowski asserts the evidence presented at trial shows the complainant consented to the sexual activity with Grabowski.

This court concludes Grabowski's reliance on *Lawrence* is misplaced. The *Lawrence* Court specifically indicated its holding did not extend to children and those unable to consent. *See Lawrence*, 539 U.S. at 578. The issue in *Lawrence*, as described by the Supreme Court, was

"whether the petitioners were free as adults to engage in the private conduct in the exercise of their liberty." *Id*. at 564. The Court emphasized the State should avoid "defin[ing] the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects." *Id*. at 567. The Court concluded its ruling did not involve minors, non-consenting or coercive relationships, but rather "two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle." *Id*. at 578. The holding in *Lawrence* was thus limited to a situation in which there is "no legitimate state interest." *See id.* Therefore, that decision cannot be rationally used as a basis to argue the same standard should apply when the State has a legitimate interest at stake, such as that of protecting disabled individuals from sexual abuse. *See id*. In *Lawrence*, the Supreme Court carefully drew lines to ensure the State remains free to enact legislation that gives effect to its legitimate interest in the protection of disabled individuals. *See id*.

Long-standing Texas law instructs that the purpose of the effective consent provision contained in the Texas Penal Code is to protect those whom the law deems incapable of consent. *See Rider v. State*, 735 S.W.2d 291, 293 (Tex. App.—Dallas 1987, no writ.). The Penal Code defines a "disabled individual" as "a person older than 13 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect the person's self from harm or to provide food, shelter, or medical care for the person's self." *See* TEX. PENAL CODE ANN. § 22.021(b)(3) (West Supp. 2016). In sexual assault cases in which the complainant is disabled, the relevant issue is whether the complainant has the capacity to consent to the sexual encounter. *See Rider v. State*, 735 S.W.2d 291, 293 (Tex. App.—Dallas 1987, no writ.).

At the time of the underlying offense, the complainant was a nineteen-year-old senior in high school enrolled in a transitional vocational class for five periods of the school day. The complainant's instructional level as a senior was labeled as "K," or Kindergarten. According to

Estella Martinez, the complainant's teacher, the complainant was not able to spell her name correctly. Further, the complainant was not able to correctly answer any questions when tested for social judgment and common-sense reasoning. Additionally, the evidence presented at trial shows the complainant's IQ is 40, which is the lowest score possible.

Wendy Smart, the psychologist who administered the tests to the complainant, testified individuals with the complainant's level of disability require support for nearly all activities that comprise daily living, including meals, dressing, bathing, and elimination. According to Smart, such individuals are not able to make responsible decisions regarding their own well-being. Finally, Smart testified a person with the complainant's level of disability would not be able to understand the consequences of deciding whether to have sexual intercourse.

Martinez testified the complainant was someone who wanted to please others and would generally do what was asked of her by someone in authority. Martinez also testified that when she spoke with the complainant about being pregnant, she was uncertain the complainant even understood the concept of pregnancy. Dr. Jules also testified the complainant had no reaction to the news of her pregnancy.

Danner testified the complainant was "quite impaired" and was diagnosed with moderate to severe intellectual disability. According to Danner, the complainant spoke very simplistically and it was evident nearly immediately upon meeting her the complainant is disabled. Danner also testified it was difficult to converse with the complainant because her speech was difficult to understand. Danner further testified the complainant was substantially unable to provide food, shelter, or medical care for herself or protect herself from harm. Finally, Danner testified it was her opinion the complainant did not have the capacity to consent to sexual intercourse. School nurse, Mary Francis Bard, additionally described the complainant as "someone who does not have the mental capacity to consent to at any time or understand the consequences of sexual activity."

Danner testified the complainant, although not requiring behavior intervention, required significant supervision in all areas. According to Danner, the complainant was not able to find unfamiliar areas on the high school campus without assistance, and she was not allowed to go out alone in the neighborhood, to school, or other places appropriate for her age. Danner described the complainant as having cognitive problems with additional difficulties concentrating, remembering, and making decisions. Danner also described the complainant as a person who wanted to please others and was easily directed by those in authority. Danner verified Grabowski was listed as a contact, as well as the complainant's father, in the school's computer system. Danner additionally verified Grabowksi completed paperwork on the complainant's behalf.

The complainant also identified Grabowski as her step-father or dad and testified on cross-examination that Grabowski had done nothing to hurt her and had not forced her to do anything she didn't want. The complainant testified she wanted Grabowski to return and live with her family. The complainant verified Grabowski is KA's father.

In this case, the jury was authorized to find Grabowksi committed aggravated assault if the jury found the complainant was a disabled individual and Grabowski penetrated the complainant's sexual organ without the complainant's consent. To find a lack of effective consent, the jury was required to find Grabowski knew that as a result of mental disease or defect the complainant, at the time of the sexual assault, was incapable either of appraising the nature of the act or of resisting it. The jury was permitted to infer Grabowski penetrated the complainant's sexual organ from the testimony Grabowksi could not be excluded as the father of the complainant's child. Further, the jury was presented with evidence the complainant was substantially unable to protect herself from harm or to provide food, shelter, or medical care for herself.

Finally, with regard to the issue of consent, the jury heard testimony from school officials who interacted regularly with the complainant or administered tests to her, as well as the

complainant herself. School officials testified the complainant would not be able to understand the consequences of having sexual intercourse and additionally did not possess the capacity to consent to do so. The complainant testified Grabowksi had never done anything to her she did not want and had not hurt her. The jury was within its rights as the factfinder to resolve any conflict between the complainant's and school officials' testimonies in the school officials' favor. *See Jackson*, 443 U.S. at 319; *Wyatt*, 23 S.W.3d at 30.

When the evidence is viewed in the light most favorable to the verdict, a rational factfinder could have found the complainant is a disabled individual and Grabowski penetrated the complainant's sexual organ without the complainant's consent. Consequently, the court concludes the evidence in this case is sufficient to sustain the jury's finding that Grabowski committed the offense of aggravated sexual assault.

Issue one is overruled.

### Outcry Statement

In his second issue, Grabowski contends the trial court erred by admitting Danner's testimony regarding D.A.'s outcry statement because the statement did not satisfy the requirements of Texas Code of Criminal Procedure article 38.072.

### *Standard of Review and Applicable Law*

This court reviews the trial court's decision to admit or exclude an outcry statement for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court has "broad discretion" to determine the admissibility of outcry evidence, and this court will not disturb the trial court's determination as to the proper outcry witness absent a showing in the record that the trial court clearly abused its discretion. *Id*. A trial court abuses its discretion when its determination lies outside the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Article 38.072 establishes an exception to the hearsay rule, applicable in proceedings for the prosecution of certain listed offenses, for statements made by a disabled victim "to the first person, 18 years of age or older, other than the defendant, to whom the [victim] … made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2015). To be admissible under article 38.072, outcry testimony must be elicited from the first adult to whom the outcry is made. *Id*. at § 2(a)(1)-(3); *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). Further, the statement about the offense must be more than "a general allusion that something in the area of child abuse was going on." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Reyes v. State*, 274 S.W.3d 724, 727-28 (Tex. App.—San Antonio 2008, pet. ref'd). The evidence must show the victim described the alleged offense in some discernible manner to the witness. *See Lopez*, 343 S.W.3d at 140.

*Application*

The trial court held a hearing outside the presence of the jury and determined Cheryl Danner was a proper outcry witness. In front of the jury, Danner testified the complainant was sobbing and shaking, placed her head in Danner's lap, and told Danner that Mother told her not to talk. According to Danner, the complainant stated Mother took her to the doctor and the doctor poked her belly. When Danner asked the complainant how she got the baby in her belly, the complainant responded, "Daddy did this. And he should lay in bed, or sleep in bed, with mommy and do the nasty with mommy." Danner testified the complainant further told her, "I shouldn't have to have a baby. Mama should have to have a baby."

The statements made by the complainant allude to sexual activity between Grabowski and the complainant but they do not describe the alleged offense with any specificity or in any discernible manner. The how, when, and where relative to the alleged abuse cannot be determined from the complainant's statements to Danner, and the information related by the complainant to

Danner does not touch upon the detail required by article 38.072. Accordingly, this court concludes the trial court abused its discretion when it allowed Danner to testify as the outcry in this case.

Having determined the trial court abused its discretion, this court must next determine whether the error is reversible. *See* TEX. R. APP. P. 44.2(b). The admission of inadmissible hearsay testimony is non-constitutional error, and it will be considered harmless if, after examining the record as a whole, this court is reasonably assured the error did not influence the jury's verdict or had but a slight effect. *Id*; *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

Catherine Haskins-Miller, a forensic scientist with the serology and DNA section of the Bexar County Criminal Investigations Lab, tested the DNA samples obtained from the buccal swabs. Haskins-Miller also examined and compared the DNA testing results, which indicated Grabowski could not be excluded as KA's father. Haskins-Miller testified Grabowski was 610,400 times more likely to be the biological father of complainant's son than a random unrelated individual and stated the likelihood of Grabowski being the father of the complainant's son was greater than 99.9%. Thus, Danner's testimony regarding the complainant's statements was not the only testimony before the jury establishing the parentage of the complainant's child or that the sexual act occurred between Grabowski and the complainant.

Accordingly, having considered the record as a whole, this court is reasonably assured the trial court's erroneous admission of the evidence had but a slight effect, if any effect at all, on the jury's verdict. *See Garcia*, 126 S.W.3d at 927.

Issue two is overruled.

**Expert Testimony**

In his third issue, Grabowski contends the trial court erred by allowing Danner to testify outside the scope of her legal expertise. Grabowski specifically complains Danner was not qualified to testify regarding D.A.'s ability to consent.

*Standard of Review*

This court reviews the trial court's determination regarding the admission of expert testimony and experts' qualifications under an abuse of discretion standard. *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997); *Acevedo v. State*, 255 S.W.3d 162, 166 (Tex. App.— San Antonio 2008, pet ref'd). An abuse of discretion occurs when the trial court's decision lies outside the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542.

To preserve a complaint for appellate review, the complaining party must make a timely objection to the trial court which states the grounds with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. TEX. R. APP. P. 33.1(a)(1). The complaining party must let the trial court know what he wants and why he thinks he is entitled to it, and he must do so clearly enough for the trial court to understand and at a time when the trial court is in a position to do something about it. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). Further, the complaint on appeal must comport with the objection made at trial. *Id.*

*Application*

Rule of Evidence 702 provides '[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. To be qualified to provide expert opinion testimony, the witness must possess some additional knowledge or expertise beyond that

possessed by the average person, but that gap need not necessarily be monumental. *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010).

During Danner's testimony, the State repeated the legal definition of a disabled person and then asked Danner, "Does [the complainant] meet this definition?" Grabowski made the following objection: "I'm sorry. The witness may be an expert in many things, but she is not qualified to render a legal conclusion as to what — to whether or not [the complainant] met the criteria." The trial court overruled the objection.

On appeal, Grabowski presents his complaint as "[t]he State's expert was not qualified to testify to the inability of the complainant to consent. The trial court erred when it allowed this testimony before the jury over the objection of counsel." Grabowski then argues "[t]here was no testimony that Mrs. Danner has any experience in sexuality of disabled persons, the ability of disabled persons to consent to sex, or sexual abuse." Grabowski, however, does not point this court to any portion of the record where he objected to Danner's expert testimony regarding the complainant's ability to consent. Accordingly, this court concludes Grabowski's lack of objection to Danner's expert testimony regarding the complainant's ability to consent waives his complaint of issue three on appeal. *See* Tex. R. App. P. 33.1(a).

Issue three is overruled.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed.

Jason Pulliam, Justice

DO NOT PUBLISH